UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

JAMES CHERRY,

                       Plaintiff,

   -against-

DETECTIVE ALICE RODENBURG, Shield No. 1950,
and THE CITY OF NEW YORK,

                       Defendants.

------------------------------------------------------------------------ X

**MEMORANDUM & ORDER**

04-CV-1902 (JMA)

A P P E A R A N C E S:

Alan D. Levine, Esq.
80-02 Kew Gardens Road, Suite 1010
Kew Gardens, New York 11415
*Attorney for Plaintiff*

Michael A. Cardozo
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
        *By:*   *Sumit Sud*
                  *Assistant Corporation Counsel*

Daniel M. Donovan, Jr.
District Attorney, Richmond County
130 Stuyvesant Place
Staten Island, New York 10301
        *By:*   *Morrie I. Kleinbart*
                  *Assistant District Attorney*

**AZRACK, United States Magistrate Judge:**

      Plaintiff, James Cherry ("Cherry" or "plaintiff"), moves for an order compelling the District Attorney of Richmond County ("District Attorney") to produce transcripts of state grand jury proceedings from the criminal prosecution underlying the instant federal civil rights action.

Plaintiff seeks production of the transcripts for inspection by his attorney, subject to the existing protective order. The District Attorney's office opposes the motion. For the reasons stated herein, I deny plaintiff's motion to unseal the state grand jury transcripts.

## I. BACKGROUND

Plaintiff was arrested on January 3, 2003, by defendant Detective Alice Rodenburg ("Rodenburg") and charged with the murder of his wife's brother-in-law, Anthony Serrano. (Complaint ¶ 15; Decl. of A. Levine ("Levine Decl.") Ex. D, Aug. 12, 2008.) Information provided by Witness A, an accomplice after the fact, and Witness B, a corroborating witness, served as the basis for plaintiff's arrest and subsequent prosecution. (Levine Decl. Ex. D.) Plaintiff was indicted by a grand jury on January 24, 2003, under Indictment Number 21/2003 and charged with murder, manslaughter, and criminal possession of a weapon. (Complaint ¶ 17; Levine Decl. Ex. I.)

The indictment against plaintiff was dismissed without prejudice on December 17, 2003. (Complaint ¶ 18; Levine Decl. Ex. B, C, D.)[1] In the Recommendation for Dismissal, the District Attorney explained that although Witness A remained "cooperative and consistent", Witness B "became reluctant and unavailable" and "recanted his/her previous statement claiming confusion as to the dates and times." (Levine Decl. D.) Consequently, the People's case "[relied] upon the unsubstantiated testimony of Witness A, who [might] be found to be an accomplice in fact by the

---

[1] The indictment was not dismissed *with* prejudice as stated in the complaint. (See Complaint ¶ 18; but see Levine Decl. Ex. B.)

jury with no corroboration."  (Id.)[2]

Plaintiff commenced the instant action pursuant to 42 U.S.C. § 1983 on May 7, 2004, against defendant Rodenburg and the City of New York ("City"), alleging false arrest, malicious prosecution, and negligence arising from plaintiff's state criminal prosecution.  (Complaint ¶¶ 2, 4.)  On July 26, 2006, plaintiff made an application to the Supreme Court, Richmond County, for an order unsealing the state grand jury minutes.  (Levine Decl. Ex. I.)  Justice Stephen Rooney denied plaintiff's motion, stating that he had "failed to meet his threshold burden" of demonstrating "compelling and particularized need for the minutes."  (Levine Decl. Ex. L.)

Presently before the Court is plaintiff's motion seeking production of the state grand jury transcripts to his attorney, subject to the existing protective order.  (Docket No. 29, Mar. 4, 2008.)  Plaintiff claims that the grand jury transcripts are necessary "to show that he was falsely arrested and prosecuted in bad faith."  (Pl.'s Mem. of Law 5, Aug. 12, 2008 ("Pl.'s Mem.").)  Plaintiff states that "[t]he factors that have led to the making of this motion are (a) the allegation by plaintiff's wife that defendant Rodenburg coerced her into providing false testimony to the grand jury based upon her coerced false statement, and (b) that the District Attorney's office, in its application to the state court to have the charge against plaintiff dismissed, acknowledged that one of its witnesses who testified before the grand jury was unreliable."  (Pl.'s Mem. 4.)

Plaintiff appears to be arguing that, because the District Attorney stated in the Recommendation for Dismissal that Witness B, who testified before the grand jury as a corroborating witness, ultimately recanted his/her testimony, the District Attorney caused

---

[2] New York Criminal Procedure Law § 60.22(1) states that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense."

falsified testimony to be presented to the grand jury, resulting in plaintiff's indictment. (Complaint ¶ 19; Pl.'s Mem. 4.) Plaintiff also claims that he is entitled to the transcript of Witness A's testimony because the District Attorney admitted that Witness A, like Witness B, "turned out to be" unreliable. (Pl.'s Mem. 5.) Plaintiff further alleges that defendant Rodenburg coerced plaintiff's wife, Rachel Cherry, into providing false testimony, consistent with her previous statement to police, to the grand jury by threatening to have her children removed from her home. (Complaint ¶ 19; Pl.'s Mem. 4-5.)

Plaintiff seeks "at the very least" transcripts of the grand jury testimony of Rachel Cherry, defendant Rodenburg, Witness A and Witness B, arguing that the criminal prosecution has been "dormant" for many years and the "need for disclosure has become greater than the need for the continued secrecy of the minutes." (Pl.'s Mem. 5.) Plaintiff "believes that he is also entitled to" discovery of the transcripts of any other police officers who may have testified before the grand jury, as well as the identity of any other grand jury witnesses. (Id.)

## II. DISCUSSION

In general, requests for disclosure of grand jury transcripts should first be directed to the court that supervised the grand jury's activities. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 226 (1979). In the instant case, plaintiff made an application to the Supreme Court, Richmond County for an order unsealing the grand jury's minutes. (Levine Decl. Ex. I.) The state court judge concluded that plaintiff failed to meet the burden of establishing a compelling and particularized need for the grand jury testimony under New York law and denied plaintiff's motion on September 29, 2006. (Levine Decl. Ex. L.) Plaintiff renewed his

application to this Court on August 13, 2008. (See Docket Nos. 41-43.) Although this Court is not bound by state law protecting the secrecy of state grand jury proceedings, "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." Wilson v. City of New York, No. 06-CV-229 (ARR) (VVP), 2007 U.S. Dist. LEXIS 97490, at *4 (E.D.N.Y. Dec. 21, 2007) (quoting Lora v. Bd. of Ed. of City of New York, 74 F.R.D. 565, 576 (E.D.N.Y. 1977)).

Under federal law, a party seeking disclosure of federal grand jury material must demonstrate a "particularized need", which requires a showing that the material sought "is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed." Douglas Oil, 441 U.S. at 222-23; see also In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996); Alvarado v. City of New York, No. 04-CV-2558 (NGG) (VVP), 2006 U.S. Dist. LEXIS 57345, at *7 (E.D.N.Y. Aug. 5, 2006). The same showing has been required with respect to applications for the disclosure of state grand jury transcripts. Alvarado, 2006 U.S. Dist. LEXIS 57345, at *7-8 (citations omitted). "A generalized desire for discovery needed to prove one's case . . . does not constitute the requisite showing of particularized need." Id. at *9 (citing Baker v. U.S. Steel Corp., 492 F.2d 1074, 1076 (2d Cir. 1974)).

In balancing the need for disclosure against the need for continued grand jury secrecy, the Supreme Court instructs courts to consider the following reasons in support of continued secrecy:

(1) To prevent the escape of those whose indictment may be contemplated;
(2) to insure the utmost freedom to the grand jury in its deliberations, and

> to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

Douglas Oil, 441 U.S. at 219 n.10 (citations and quotation marks omitted). The Supreme Court cautions that, in considering the effects of disclosure, "the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." Id. at 222.

Plaintiff Cherry seeks, at a minimum, transcripts of the grand jury testimony of Rachel Cherry, defendant Rodenburg, Witness A and Witness B. (Pl.'s Mem. 5.) Plaintiff does not state with any particularity why he requires these transcripts, but contends generally that his attorney needs to review the testimony in order to obtain information that shows "he was falsely arrested and prosecuted in bad faith." (Id.) The Second Circuit has noted that, in a malicious prosecution action, the presumption of probable cause created by a grand jury indictment "may be rebutted by evidence of various wrongful acts on the part of the police . . . [such as] fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith" to secure the indictment. Blake v. Race, 487 F. Supp. 2d 187, 211 (E.D.N.Y. 2007) (quoting McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006)) (internal quotation marks omitted); see also Jefferson v. Kelly, No. 06-CV-6616 (NGG) (LB), 2008 U.S. Dist. LEXIS 32954, at *12-13 (E.D.N.Y.

Apr. 21, 2008). Accordingly, although it might be *useful* for plaintiff to have access to the grand jury minutes in order to prove his case, as noted supra, grand jury transcripts should not be released to "to permit *general discovery* in a civil case". Baker v. U.S. Steel Corp., 492 F.2d at 1079 (emphasis in original).

Plaintiff avers that the District Attorney, in dismissing the indictment against plaintiff, admitted that neither Witness A nor Witness B was reliable. (Pl.'s Mem. 5.) This is simply not true. The Recommendation for Dismissal clearly states that, although Witness A was initially "uncooperative and provided two different statements" to investigators, Witness A was "cooperative and consistent" throughout the prosecution and "maintained his/her representations." (Levine Decl. D.) Witness B, however, "became reluctant and unavailable" and "recanted his/her previous statement claiming confusion as to the dates and times." (Id.) Witness A's testimony, as a possible accomplice after the fact, required corroboration by Witness B. (Id.)³ Absent such corroboration, the District Attorney deemed it necessary and prudent to seek dismissal of the indictment. (Id.; see also Dist. Atty's Mem. of Law in Opp'n to Pl.'s Mot. to Unseal State Grand Jury Mins. 5, Sept. 12, 2008 ("Dist. Atty's Mem.").) Plaintiff's circuitous argument that, because Witness B ultimately recanted his/her testimony, the District Attorney caused the falsified testimony of both Witness A and Witness B to be presented to the grand jury, resulting in plaintiff's indictment, defies logic and is insufficient to demonstrate bad faith on the part of the police or the District Attorney. Moreover, the indictment against plaintiff was dismissed without prejudice, the investigation into the murder of Anthony Serrano remains open, and plaintiff remains a suspect. (Dist. Atty's Mem. 6-8.) Consequently, the protection of

---

³ See also New York Crim. Proc. Law § 60.22(1); supra note 2 and accompanying text.

past and prospective grand jury witnesses from intimidation and fear of retribution does not favor disclosure.

Furthermore, plaintiff has not articulated with any particularity why he seeks the grand jury transcripts of his wife, Rachel Cherry, and defendant Rodenburg. Plaintiff seems to be arguing that disclosure of these transcripts would allow him to gather information necessary to show that defendant Rodenburg, through coercion, caused Rachel Cherry to testify falsely before the grand jury. The Court notes that defendant Rodenburg testified at her deposition that, when she saw Rachel Cherry at the District Attorney's office on the day of her grand jury testimony, she reminded her "that she needed to tell the truth and that if she didn't tell the truth, there was a possibility that, you know, her children could be taken from her[.]" (A. Rodenburg Dep. 111:6-11, Feb. 15, 2008.) Rachel Cherry, likewise, testified at her deposition that the statement she made to police on December 27, 2002, implicating plaintiff was false, and that she made the statement under threat of having her children taken from her. (R. Cherry Dep. 84:12-25, 87:9-89:2, May 4, 2007 ("R. Cherry Dep.").) She also testified that defendant Rodenburg told her, before her grand jury testimony, that if she did not testify in accordance with her previous statement, she would go to jail. (R. Cherry Dep. 111:17-113:17, 116:8-18.) Plaintiff has not shown why this deposition testimony is insufficient, or what, if anything, he hopes to learn from defendant Rodenburg's and Rachel Cherry's grand jury testimony. Plaintiff's speculative "need" for these grand jury transcripts is hardly sufficient to warrant disclosure, particularly given the many compelling reasons in favor of maintaining grand jury secrecy.

Finally, the Court notes that New York law permits a witness to disclose his or her own grand jury testimony. See New York Crim. Proc. Law § 190.25(4)(a) ("Grand jury proceedings

are secret, and no grand juror, or other person specified in subdivision three of this section or section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding . . . *Nothing contained herein shall prohibit a witness from disclosing his own testimony*.") (emphasis added). Thus, plaintiff's wife, Rachel Cherry, is free to disclose her grand jury testimony to plaintiff, if she so chooses.

### III. CONCLUSION

Plaintiff has not shown that an injustice might result in the instant proceeding absent disclosure of the witnesses' grand jury testimony, or that the need for disclosure is greater than the need for continued secrecy. Moreover, plaintiff's broad disclosure request further manifests his desire for general discovery needed to prove his case, rather than a particularized need for specific portions of the state grand jury minutes. Accordingly, I deny defendant's motion to unseal the state grand jury transcripts.

SO ORDERED.

Dated: October 15, 2008
Brooklyn, New York

/ s /
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE